# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ALVIN VAN PELT III,

    Petitioner,

v.                                                                                     No. 1:17-CV-647-RB-KRS

TODD GIESEN, Captain/Warden,
Bureau of Indian Affairs, Office of Justice Services
Division of Corrections, BRIAN CORIZ, Governor,
Kewa Pueblo, ESQUIPULA TENORIO, Lieutenant Governor,
Kewa Pueblo, and JAVIN CORIZ, Tribal Official #4, Kewa Pueblo,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Petitioner's Petition for Writ of Habeas Corpus for Relief from a Tribal Court Conviction Pursuant to 25 U.S.C. § 1303[1] ("Petition"), filed June 15, 2017 (Doc. 1). On June 19, 2017, in accordance with 28 U.S.C. § 636(b)(1)(B), this Petition was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. *See Order of Reference*, ECF No. 4. Having reviewed the record and the parties' briefing, the undersigned recommends that the Court GRANT Petitioner's Petition and VACATE Petitioner's underlying sentence and conviction.

### Introduction and Background

On March 18, 2017, while on the Pueblo of Santo Domingo Reservation, Petitioner was arrested for possession of narcotics. He was brought before the Tribal Court on March 21, 2017, at which time he entered a plea of guilty. The Court adjudged Petitioner guilty and sentenced

---

[1] The Court has determined that the rules governing 28 U.S.C. § 2254 apply to actions under 25 U.S.C. § 1303. *See* 28 U.S.C. § 2254, Rule 1(b) ("Other Cases. The district court may apply any or all of these rules to a habeas corpus petition [not brought by a person in custody under a state-court judgment].").

him to a "jail term" of one year and assessed various fines and fees. (Doc. 1-1). On June 15, 2017, Petitioner filed the instant Petition for Writ of Habeas Corpus, alleging violations of the Indian Civil Rights Act of 1968 ("ICRA") 25 U.S.C. §§ 1301-1303. Specifically, Petitioner argues that he was (1) denied the right to assistance of counsel, in violation of 25 U.S.C. § 1302(a)(6); (2) denied the right to a trial by jury, in violation of 25 U.S.C. § 1302(a)(10); and (3) subjected to cruel and unusual punishment, in violation of 25 U.S.C. § 1302(a)(7)(A).

On January 16, 2018, the Court ordered that Petitioner be released from prison, "pending the Court's final order or decision." *Order for Release of Petitioner*, ECF No. 23, p. 2. Through a series of briefings and hearings, Respondents expressed that they did not oppose Petitioner's Petition, and thus the parties were directed to provide Judge Brack with a stipulated proposed order granting the petition. Unfortunately, the parties were unable to agree upon the proper relief to be granted. Respondents were amenable to relief which vacated Petitioner's sentence and conviction, whereas Petitioner desired a reversal of his sentence and conviction.[2] The parties were invited to brief the issue of relief and the Court set a briefing deadline of February 23, 2018. Respondents Brian Coriz, Javin Coriz, and Esquipula Tenorio (collectively "Tribal Respondents") were the only parties to submit such a brief.

## Analysis

The Court first notes that as there is no opposition to Petitioner's Petition, there are no factual disputes to resolve. Accordingly, the Court need only consider the relief to which Petitioner is entitled upon the granting of his Petition. The confines of habeas corpus, and ICRA by extension, provide the Court with a clear direction in this regard.

---

[2] At the April 3, 2018 status conference, Petitioner, for the first time, stated that the disagreement as to the form of order was related to his proposed findings, not the relief requested. The issue of findings was never formally brought before the Court and Respondents did not affirm Petitioner's characterization of the dispute. Further, the months of hearings and briefings leading to the instant PFRD demonstrate that the parties could not agree upon the relief available under 25 U.S.C. § 1303.

Indian tribes are inherently sovereign. "Although physically within the territory of the United States and subject to ultimate federal control, they nonetheless remain a separate people, with the power of regulating their internal and social relations." *United States v. Wheeler*, 435 U.S. 313, 322 (1978) (quotation omitted) *superseded by statute as recognized in U.S. v. Lara*, 541 U.S. 193 (2004). As a result, the United States Constitution's Bill of Rights does not operate as a restriction on tribal governments. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978); United States Commission on Civil Rights, *The Indian Civil Rights Act: A Report of the United States Commission on Civil Rights*, at 4 (1991) [hereinafter *ICRA Report*]. Concerned that the rights of individual tribal members were not adequately protected in tribal courts, Congress enacted ICRA, a "modified version of the bill of rights," *ICRA Report* at 5, which was intended to strike a balance between tribal sovereignty and what Congress perceived as a need to "secur[e] for the American Indian the broad constitutional rights afforded to other Americans." *Santa Clara Pueblo*, 436 U.S. 49, 61 (1978) (quotation omitted).[3]

The codification of ICRA was years in the making and the subject of remedies was thoroughly vetted prior to the Statute's enactment. *Id.* at 62. Legislative history makes clear that when determining how to address alleged ICRA violations, Congress specifically rejected a

---

[3] The value and sophistication of tribal court systems should be noted at this juncture. In the words of Navajo Chief Justice Tom Tso:
> I regret that the outside world has never recognized that Navajos were functioning with sophisticated and workable legal and political concepts before the American Revolution. I regret even more that the ways in which we are different are neither known nor valued by the dominant society. Because we are viewed as having nothing to contribute, much time has been wasted. Let me be more specific. Anglo judicial systems now pay a great deal of attention to alternative forms of dispute resolution. Before 1868 the Navajos settled disputes by mediation. Today our Peacemaker Courts are studied by many people and governments. Anglo justice systems are now interested in compensating victims of crime and searching for ways to deal with criminal offenders other than imprisonment. Before 1868 the Navajos did this. Now Anglo courts recognize the concept of joint custody of children and the role of the extended family in the rearing of children. Navajos have always understood these concepts. We could have taught the Anglos these things one hundred and fifty years ago.

*ICRA Report* at 11, n. 35, *quoting Tso, The Process of Decision Making in Tribal Courts*, 31 Ariz. L. Rev. 225, 227 (1989).

proposal which would have allowed federal courts to conduct de novo reviews of all tribal convictions. *Id.* at 67. Ultimately, Congress determined that the sole remedy for violations of the Act would be review by way of habeas corpus. *See Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1461 (10th Cir. 1989) ("The Supreme Court in *Santa Clara Pueblo*, expressly invoking concerns about preserving tribal autonomy and self-government, reasoned that the statutory scheme and the legislative history of Title I of the ICRA indicate Congress deliberately decided not to provide federal remedies other than habeas corpus in order to limit the Act's intrusion into tribal sovereignty.").

From its inception, the writ of habeas corpus was designed to be a mechanism through which one could challenge the legality of his or her confinement. At common law, the writ was used solely to challenge a court's jurisdiction to commit an individual to prison. *See, e.g.*, *Ex parte Watkins*, 28 U.S. 193, 197 (1830). However, the writ has long since been codified and its scope has expanded to address a multitude of post-conviction challenges from questions of jurisdiction to collateral attacks on constitutional violations. *See Withrow v. Williams*, 507 U.S. 680 (1993) (finding that habeas jurisdiction extends to *Miranda* violations); *Stone v. Powell*, 428 U.S. 465 (1976) (discussing the expansion of the writ of habeas corpus). As with most principles of law that withstand the test of time, habeas corpus jurisprudence has evolved, resulting in debates over federalism, finality, and the safeguarding of rights. *See, e.g.*, *Withrow*, 507 U.S. 680 (1993); *Wainwright v. Sykes*, 433 U.S. 72 (1977).

While the breadth and reach of the writ of habeas corpus may be argued amongst scholars and jurists alike, the significance of the writ, both historically and practically, is rarely called into question. This is likely why Congress determined that the writ should be available under ICRA. Importantly, though, whether considering habeas corpus under 28 U.S.C. §§ 2241-2255, or as it

applies to ICRA pursuant to 25 U.S.C. § 1303, the Court may not treat a habeas petition as an appeal and substitute a final judgment of its own making for that of the convicting court. What the Court may do upon granting a petition for habeas corpus is order the petitioner to be released, vacate the petitioner's sentence, and/or fashion an equitable remedy that is within the purview of the Court's habeas jurisdiction. 28 U.S.C. § 2255(a) (providing that, in a habeas action, a federal prisoner may move the court to vacate, set aside, or correct his or her sentence). *See also Davis v. United States*, 417 U.S. 333, 343–44 (1974) (explaining that 28 U.S.C. § 2255 was designed to afford to federal prisoners "a remedy identical in scope to federal habeas corpus [under 28 U.S.C. § 2254].").

A sentence reversal, then, as Petitioner requests, would require the Court to act in its appellate capacity and would run afoul of the confines of habeas corpus review. As the Tribal Respondents highlight in their brief, the terms "vacate" and "reverse" have, at times, been used almost interchangeably in ICRA actions. However, the terms implicate very different results. In light of the sanctity of tribal sovereignty, and the need to safeguard not just the rights of the individual, but also the rights of the tribe, it is imperative that the Court stay within its own lane when crafting appropriate relief in this case.

### Recommended Disposition

For the reasons set forth above, it is hereby RECOMMENDED that the Court GRANT Petitioner's Petition for Writ of Habeas Corpus and VACATE Petitioner's underlying sentence and conviction.

It is further RECOMMENDED that Petitioner be released from custody.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven days from the**

**date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen-day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE